UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:17-CV-00197

UNITED STEEL, PAPER AND
FORESTRY, RUBBER,
MANUFACTURING, ENERGY,
ALLIED INDUSTRIAL AND
SERVICE WORKERS
INTERNATIONAL UNION,
AFL-CIO-CLC and
its Local No. 9447-10,                                                                                   PLAINTIFF

v.

H.B. FULLER COMPANY,                                                                                DEFENDANT

**Memorandum Opinion & Order**

This matter is before the Court on Defendant's, H.B. Fuller Company ("H.B. Fuller"), Motion for Summary Judgment (R. 16) and Plaintiff's, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC and its Local No. 9447-10 ("USW"), Cross-Motion for Summary Judgment. (R. 17). Fully briefed, these matters are ripe for adjudication. For the reasons set forth below, H.B. Fuller's Motion for Summary Judgment (R. 16) is HEREBY DENIED, and USW's Cross-Motion for Summary Judgment (R. 17) is HEREBY GRANTED IN PART and DENIED IN PART.

**I. Background**

The primary issue before this Court whether the parties must arbitrate a grievance filed by USW on Les Huntley's behalf. USW contends they must. (R. 17). H.B. Fuller disagrees. (R. 16). Huntley is one of 76 H.B Fuller employees in a bargaining unit represented by USW, and his grievance was filed pursuant to the collective bargaining agreement ("CBA") between USW

1

and H.B. Fuller. (R.13 ID # 80). Three documents and their relation to one another are crucial to the issue before the Court: (1) Huntly's grievance, (2) H.B Fuller's Performance Planning & Assessment Overview Policy ("PPA"), and (3) the CBA.

### A. Huntley's Grievance

Huntley's grievance alleges that in 2016 and 2015 he had received an "inconsistent" Performance Planning & Assessment rating despite receiving a "successful" rating at both mid-year reviews. (R. 13-2 ID # 125). The grievance goes on to state that "Les was not made sufficiently aware that his performance was slipping to the point of 'inconsistent' in either case nor had he received any formal coaching or direction to correct alleged issues," and that "[t]he Union requests that Les Huntley receive a new Performance Planning & Assessment rating" for 2016. (R. 13-2 ID # 125).

### B. The PPA

The Performance Planning & Assessment ratings to which Huntley's grievance refer are given to all H.B Fuller employees once mid-way through the year and once at the year's end pursuant to the PPA. (R. 13 ID # 81). The PPA is H.B. Fuller's performance review policy. (R. 13 ID # 80). It applies to all its employees equally, including those represented by USW. (R. 13 ID # 80). The Year-End PPA Rating, is used to determine the employee's potential wage increase and contains no mechanism or formal procedure by which an employee, USW represented or otherwise, may challenge their PPA Rating. (R. 13 ID #81). The PPA states under the provision "Assessing Performance," "[p]erformance should be assessed formally at mid-year and towards year-end, as well as coached and reviewed on a regular basis throughout the year." (R. 13-1 ID # 86).

## C. The CBA

The current CBA between H.B. Fuller and USW is the most recent in a series of agreements dating back to 2004. (R. 13 ID # 80). Each CBA, including the current one, includes an arbitration clause. (R. 13 ID # 80). Ultimately, whether Huntley's grievance is arbitrable depends on whether his grievance concerning the PPA is included or excluded by this arbitration clause. Relevant to whether Huntley's grievance is included or excluded by the arbitration clause are three articles of the CBA—Articles 3, 11, and 18.

### 1. Article 3

Article 3 is titled "Management Rights" and reads in full:

> The direction of the working force is vested in the Company through its supervisory personnel. The Company reserves all the rights, powers, and authority customarily exercised by management except insofar as they are specifically surrendered or abridged by express provisions of this Agreement.

(R. 13-2 ID # 90).

### 2. Article 11

Article 11 lays out the grievance process. (R. 13-2 ID # 98-9). The first subsection defines a grievance as "an alleged violation of an express written provision of this Agreement during the term of this Agreement raised by an employee or the union." (R. 13-2 ID # 98). Article 11 then breaks the grievance process into three steps. (R. 13-2 ID # 99). The first two steps are internal, and third step contains the arbitration clause. (R. 13-2 ID # 99). Step 3 reads in full:

> Arbitration: Either party may, within ten (10) working days, request the Federal Mediation and Conciliation Services (FMCS) to submit a list of seven (7) names of persons to serve as the impartial arbitrator. The Company and the Union will each have the right, alternately, to strike a name from the list until only one name remains. The person whose name remains on the list will be designated the impartial arbitrator.

(R. 13-2 ID # 99). Article 11 goes on to restrict the arbitrator by stating that the "arbitrator will have the authority to determine only the dispute set forth in the written grievance, and will have no authority to add to, modify, or amend the provisions of this Agreement." (R. 13-2 ID # 99).

### 3. Article 18

In Article 18, H.B. Fuller and USW agree to have certain company policies apply on the same basis to both union and non-union employees. (R. 13-2 ID # 101). Appendix C lists the polices that are to apply to both sets of employees. (R. 13-2 ID # 101). The PPA is included in Appendix C. (R. 13-2 ID # 107). In pertinent part Article 18 reads as follows:

> Prior to the execution of this contract, the parties (a) agreed to prepare an alphabetical list of all benefits and policies currently applicable to the bargaining unit employees (attached as Appendix C) and (b) agreed to continue to have such benefits and policies apply on the same basis as they are made available to the company's non-bargaining unit employees (i.e., subject to modification which increases/decreases a plan or policy's scope or benefits and any increases/decreases in employee costs).

(R. 13-2 ID # 101).

## D. The Parties' Arguments

First, the Parties spend considerable time in their briefing on which, if any, presumption of arbitrability applies. USW argues that the CBA's arbitration clause is broad, making the presumption even stronger. (R. 17-1 ID # 7-8). H.B Fuller argues that no presumption applies because Articles 3 and 11 create a narrow arbitration clause. (R. 16 ID # 152).

Both Parties agree that the arbitration clause is valid and covers any grievance alleging a violation of the CBA's express provisions. (R. 16 ID # 154; R. 17-1 ID # 3). But the Parties disagree on whether Huntley's grievance makes such an allegation. USW contends Huntley's grievance does allege a violation of the CBA's express provisions because it alleges a violation of the PPA, which is incorporated by reference into the CBA through Article 18. (R. 18 ID # 192-4). H.B. Fuller argues that the PPA is not incorporated into the CBA. (R. 19 ID # 211-214). Further, according to H.B. Fuller, Huntley's grievance alleges a violation of an implied provision the PPA—not an express provision—because the PPA does not require H.B. Fuller management to coach employees as Huntley's grievance assumes. (R. 19 ID # 214-216).

Finally, the Parties dispute whether an arbitrator can grant the relief Huntley's grievance requests. Huntley's grievance requests that he be granted a new PPA rating. (R. 13-2 ID #125). According to H.B. Fuller, this would require the arbitrator to either violate Article 18 or amend Article 18, violating Article 11. (R. 19 ID # 217-218). H.B. Fuller interprets Article 18 as requiring that all policies listed in Appendix C be applied to union and non-union employees on the exact same basis. (R. 19 ID # 217-218). H.B. Fuller argues that because the PPA contains no internal mechanism by which non-union employees might challenge their PPA rating, to allow union employees to do so through the CBA would result in the PPA applying on a more

5

favorable basis to union employees than non-union employees. (R. 19 ID # 217-218). Thus, according to H.B. Fuller, an arbitrator may not grant Huntley a new PPA. (R. 19 # 217-218).

On the other hand, USW interprets Article 18 as allowing the arbitrator to grant Huntley a new PPA rating without violation or modification. (R. 20 ID # 231-3). According to USW, Article 18's "i.e. parenthetical" qualifies the "same basis" language so as to only require the PPA be applied on the same basis to union and non-union employees to the extent that it remains "subject to modification which increases/decreases [its] scope or benefits and any increase in employee costs." (R. 20 ID # 233).

## II. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The Plaintiff must present more than a mere scintilla of evidence in support of his position; the Plaintiff must present evidence on which the trier of fact could reasonably find for the Plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The Plaintiff may accomplish this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). Mere speculation will not suffice to

6

defeat a motion for summary judgment; "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012).

### III. Discussion

The Court will briefly detail the relevant legal frame work, and then, with that framework in mind, turn to its analysis.

### A. Applicable Law

It is the Court's duty to determine whether the parties have contractually agreed to arbitrate the alleged grievance. *United Steelworkers of Am. v. The Mead Corp., Fine Paper Div.*, 21 F.3d 128, 131 (6th Cir. 1994). But the Court's authority stops there—the Court cannot go further and consider the underlying grievance on its merits. *Id.* at 130 (citing *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960)). Importantly though, the Court's duty cannot be avoided because the merits of the underlying grievance are intertwined with the overarching question of whether the grievance is arbitrable. *Litton Financial Printing Division v. NLRB* 501 U.S. 190, 209 (1991). Thus, unless necessary to determine arbitrability, this Court will not analyze the merits of Huntley's grievance.

This Court cannot force the parties to arbitrate disputes to which they have not contractually agreed. *USW v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 277 (6th Cir. 2007). But when an agreement contains an arbitration clause, a presumption of arbitrability arises. *Id.* This presumption requires the Court to "resolve any doubts in favor of arbitration and not deny an

7

order to arbitrate 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Mead*, 21 F. 3d at 131 (quoting *AT&T Techs. v. Commons Workers*, 475 U.S. 643, 648-51, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)). If the arbitration clause is determined to be broad, the presumption is "'particularly applicable,' and only an express provision excluding a particular grievance from arbitration or the 'most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *United Steelworkers of Am. v. The Duluth Clinic, Ltd.*, 413 F.3d 786, 788 (8th Cir. 2005) (quoting *AT&T Techs. v. Commons Workers*, 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)).

### B. Analysis

Contrary to H.B. Fuller's position, the presumption of arbitrability applies regardless of whether the arbitration clause at issue is broad or narrow. *Willacy v. Marotta*, 683 F. App'x 468, 472 (6th Cir. 2017) ("That '[s]uch a presumption is particularly applicable where the clause is a[] broad' one, does not mean that the presumption does not apply to a run-of-the-mill or a narrow arbitration clause."). If the clause is determined to be broad the presumption is even stronger. *Id.* Although the Parties devote significant briefing to it, the determination is irrelevant here because H.B. Fuller's position cannot withstand the regular presumption, let alone the stronger.

Even under the weaker presumption the Court is required to "resolve any doubts in favor of arbitration and not deny an order to arbitrate 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Mead*, 21 F. 3d at 131 (quoting *AT&T Techs. v. Commons Workers*, 475 U.S. 643, 648-51, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)). Thus, to deny arbitration, the Court would have to find USW's interpretation of the CBA and the PPA entirely implausible. It does not. In fact, the Court

finds USW's argument that Huntley's grievance alleges a violation of an express provision of the CBA plausible and finds persuasive USW's argument that an arbitrator can provide Huntley a new PPA rating without violation article 18 or 11. As such, the Court cannot say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," let alone that the CBA contains an "express provision excluding [the] particular grievance from arbitration" or that there exists the "most forceful evidence of a purpose to exclude the claim from arbitration." *Id.*; *United Steelworkers of Am. v. The Duluth Clinic, Ltd.*, 413 F.3d 786, 788 (8th Cir. 2005) (quoting *AT&T Techs. v. Commons Workers*, 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) (stating the requirements placed upon the court by the stronger presumption of arbitrability as triggered by broad arbitration clauses)).

1. **Huntley's Grievance Alleges a Violation of an Express Provision of the CBA as Required by the Arbitration Clause.**

To be arbitrable, Huntly's grievance must allege a violation of an express provision of the CBA. (R. 13-2 ID # 98). The Court agrees with USW that Huntley's grievance alleges such a violation because it alleges a violation of the PPA's express provisions, which Article 18 properly incorporates by reference into the CBA.

i. **Article 18 Properly Incorporates the PPA into the CBA.**

The Court agrees with USW that Article 18 incorporates by reference the PPA into the CBA. Incorporation by reference is proper when: (1) the underlying contract makes clear reference to a separate document, (2) the identity of the separate document may be ascertained, and (3) incorporation of the document will not result in surprise or hardship." *ISP Chemicals*, 261 F. App'x at 848 (quoting *Standard Bent Glass Corp., v. Glassrobots Oy*, 333 F.3d 440, 447

(3d Cir. 2003)); *Teamster Local Union No. 783 v. Anheuser-Busch, Inc.,* 626 F.3d 256, 262 (6th Cir. 2010).

Here, the first two requirements are plainly met. The PPA is included in Appendix C referenced by Article 18 and, as the PPA is labelled a document that both Parties are familiar with, its identity is ascertainable. (R. 13-2; R. 13-1; R. 13). But H.B. Fuller argues that the third requirement is not met because the Parties did not directly negotiate the PPA's terms. (R. 19 ID # 212-213).

H.B. Fuller is correct in that the *ISP Chemicals* court considered the fact that the parties had negotiated the terms to be incorporated. *ISP Chemicals*, 261 F. App'x at 843. But the court did not hold that fact to be dispositive as to whether the terms were properly incorporated. Instead, it considered it a factor in determining the third requirement met. *Id.* As USW correctly points out, nothing in the *ISP Chemicals* three-part test requires the parties to have directly negotiated the terms to be incorporated. (R. 20 ID # 228). In fact, the Sixth Circuit has applied the *ISP Chemicals* test without any mention of whether the incorporated terms were directly bargained for by the parties. *Anheuser-Busch*, 626 F.3d at 262. Thus, the fact that H.B. Fuller and USW did not directly negotiate the PPA does not automatically disqualify the PPA from incorporation under the *ISP Chemicals* test's third requirement.

Indeed, the Court finds the PPA's incorporation into the CBA will not result in hardship or surprise to H.B. Fuller, thereby satisfying the third requirement. H.B. Fuller and USW reviewed and chose certain policies to continue to apply to union employees. (R. 13-2 # 101). H.B. Fuller elected to include the PPA in these policies. ( R. 13-2 # 107). H.B. Fuller further elected to clearly reference these Policies in the Article 18. (R. 13-2 # 101). The Court agrees with USW that this constitutes strong evidence that H.B. cannot claim hardship or surprise from

the PPA's incorporation into the CBA. Moreover, the Court cannot conclude that incorporating the performance policy applicable to union employees into the CBA intended to protect those employees' rights will result in hardship or surprise to H.B. Fuller—especially considering H.B Fuller instituted and implements the PPA on its own accord. Therefore, the Court concludes that Article 18 properly incorporates by reference the PPA into CBA.

### ii. Huntley's Grievance Alleges a Violation of an Express Provision of the PPA.

Huntley's grievance states that "Les was not made sufficiently aware that his performance was slipping to the point of 'inconsistent' in either case *nor had he received any formal coaching or direction to correct alleged issues*." (R. 13-2 ID #125) (emphasis added). This unmistakably points to the PPA provision titled "Assessing Performance." (R. 13-1 ID # 86). That provision states that "[p]erformance should be assessed formally at mid-year and towards year-end, as well as coached and reviewed on a regular basis throughout the year." (R. 13-1 ID #86). Thus, Huntley's grievance alleges a violation of an express provision of the PPA. H.B. Fuller's argument concerning whether the provision does, or does not, actually require H.B. Fuller management to coach employees throughout the year goes to the grievance's merits. The Court need not, and in fact is prohibited from, considering it. *Mead*, 21 F. 3d at 130 (citing *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960) (holding it improper for the court to consider the merits of the underlying grievance)).

Furthermore, H.B. Fuller's Reliance on *Teamsters Local 315 v. Union Oil Co.*, 856 F.2d 1307 (9th Cir. 1988) and *International Ass'n of Machinists and Aerospace Workers, Lodge No. 1000 v. General Electric Co.*, 865 F.2d 902 (7th Cir.1989) is misplaced. The grievances in those cases were judged excluded by their respective arbitration clauses because they vaguely pointed

to provisions of their respective collective bargaining agreements that did not relate to the disputes alleged by the grievances. *See Union Oil*, 856 F.2d at 1310-11; *See also General Electric*, 865 F.2d at 907. As quoted by H.B. Fuller, the *General Electric* court explained "[b]y 'express provision'. . . the Parties to the collective bargaining agreement in the present case must have meant not any old provision but a provision expressly addressed to the dispute the union seeks to arbitrate." *General Electric*, 865 F.2d at 906; (R. 16 ID # 159).

Here, Huntley's grievance does not point to "any old provision" of the PPA. It points directly to a "provision expressly addressed to the dispute the union seeks to arbitrate." Had Huntley's grievance baldly referenced Article 18 and nothing more, H.B. Fuller's comparison might hold water. But Huntley's grievance does more than that. It identifies a dispute with his PPA rating and then points to a PPA provision which directly addresses his dispute. Therefore, Huntley's grievance alleges a violation of an express provision of the PPA and is not comparable to the grievances in *Union Oil* or *General Electric*. Moreover, since Article 18 properly incorporates the PPA into the CBA, Huntley's grievance effectively alleges a violation of an express provision of the CBA—as required by the CBA's arbitration clause.

**2. The Arbitrator is Capable of Providing the Relief Sought by Huntley's Grievance.**

H.B. Fuller is correct. Arbitration cannot be compelled where the requested relief requires the arbitrator to "disregard or modify plain and unambiguous provisions of the agreement." *O–N Minerals v. Int'l Bhd. of Boilermakers*, 563 F. App'x 380 (6th Cir.2014). H.B. Fuller is also correct that Article 11 explicitly prohibits the arbitrator from amending the CBA at issue here. (R. 13-2 ID # 99). But H.B. Fuller is incorrect in assuming the arbitrator needs to violate or modify Article 18 to grant Huntley a new PPA rating.

According to H.B. Fuller, to allow union employees to challenge their PPA rating through the CBA's arbitration clause would result in the PPA applying on a different basis to union employees than non-union employees because the PPA has no internal mechanism by which non-union employees might also challenge their PPA ratings. (R. 19 ID # 218). H.B. Fuller contends that this violates Article 18, which, according to H.B. Fuller, requires all policies listed in Appendix C—including the PPA—to apply on exactly the same basis to both union and non-union employees. (R. 19 ID # 218). The Article 18 language on which H.B. Fuller relies reads as follows:

> Prior to the execution of this contract, the parties (a) agreed to prepare an alphabetical list of all benefits and policies currently applicable to the bargaining unit employees (attached as Appendix C) and (b) agreed to continue to have such benefits and policies apply on the same basis as they are made available to the company's non-bargaining unit employees (i.e., subject to modification which increases/decreases a plan or policy's scope or benefits and any increases/decreases in employee costs).

(R. 13-2 ID # 101).

H.B. Fuller is correct again. Allowing union employees to challenge their PPA ratings through the CBA would result in the PPA applying on a different basis to union employees than non-union employees. But H.B. Fuller is incorrect that this would violate Article 18. Article 18's "i.e. parenthetical" qualifies to what extent the policies listed in Appendix C, including the PPA, must be applied on the same basis to union and non-union employees. As USW correctly notes, the parenthetical contains the abbreviation i.e.—not e.g. i.e., translated from the Latin "id est," means "that is." Thus, the explanatory parenthetical directly following, and thereby qualifying, the sentence imposing the requirement that the PPA be applied to non-union and union employees on the same basis reads literally:

13

> Prior to the execution of this contract, the parties (a) agreed to prepare an alphabetical list of all benefits and policies currently applicable to the bargaining unit employees (attached as Appendix C) and (b) agreed to continue to have such benefits and policies apply on the same basis as they are made available to the company's non-bargaining unit employees (*THAT IS*, subject to modification which increases/decreases a plan or policy's scope or benefits and any increases/decreases in employee costs).

(R. 13-2 ID # 101) (emphasis added). As such, Article 18 only requires that the PPA be applied to union and non-union employees on the same basis to the extent that it must remain subject to modifications that increase or decrease its scope or benefits and increases or decreases employee cost. Huntley's PPA rating has no effect whatsoever on whether the PPA remains applicable on the same basis to union and non-union employees regarding modifications that increase or decrease its scope or benefits and increases or decreases employee cost. Therefore, an arbitrator is able to grant the relief sought by Huntley's grievance without violating Article 18 or amending Article 18 in violation of Article 11.

### 3. USW is Not Entitled to Attorney's Fees.

Nothing here warrants awarding attorney's fees to USW. Attorney's fees are not statutorily authorized. *See* 29 U.S.C. § 185. Thus, for USW to receive attorney's fees, H.B. Fuller would have to exhibited bad faith. *See Ray A. Scharer and Co. v. Plabell Rubber Products*, 858 F.2d 317, 320 (6th Cir. 1988) (requiring bad faith to award attorney's fees in the absence of statutory grant). Nothing in the record or otherwise indicates to the Court that H.B. Fuller litigated the issue in bad faith. Therefore, USW's request for attorney's fees is denied.

## IV. Conclusion

For the reasons stated herein, **IT IS HEREBY ORDERED** that Defendant, H.B. Fuller's Motion for Summary Judgment is **DENIED,** and Plaintiff's Cross-Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

**Thomas B. Russell, Senior Judge**
**United States District Court**

October 9, 2018

cc:    Counsel of Record